UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | CASE NO. 08-60258-BP-11 |
| ZIPCO INTERNATIONAL PRODUCTS | § | |
| COMPANY, INC. | § | |
| | § | Chapter 11 |
| Debtor | § | |

## TEXAS COMPTROLLER OF PUBLIC ACCOUNTS' AND TEXAS WORKFORCE COMMISSION'S OBJECTION TO CONFIRMATION

The Texas Comptroller of Public Accounts ("Comptroller") and the Texas Workforce Commission ("TWC"), appearing through the Texas Attorney General's Office, object to confirmation of Debtor's First Amended Chapter 11 Plan of Reorganization [Docket No. 331], and would show:

1. The Plan does not comply with the applicable provisions of Title 11 of the United States Code ("Bankruptcy Code") as required by 11 U.S.C. § 1129(a)(1). Therefore, confirmation should be denied.

## PROOFS OF CLAIM

### Priority Claims

2. The Comptroller timely filed a proof of claim [Claim Number Amended 6] for sales taxes, penalty and interest accrued pre-petition in the amount of $507,352.19. The Comptroller's claim is based on final audits of the Debtor for tax periods of the fourth quarter 2003 through March 2008, and on tax returns filed by Debtor for the tax periods of February and March 2008. The Comptroller's claim is an unsecured priority claim. *See* 11 U.S.C. § 507.

3. The Comptroller timely filed a proof of claim [Claim Number Amended 7] for Texas

Emmissions Reduction Plan ("TERP") taxes, penalty and interest accrued pre-petition in the amount of $64,604.48. The Comptroller's claim is based on a final audit of the Debtor for tax periods of March 2004 through July 2007 and estimates for the tax periods of November 2007, December 2007, January 2008, February 2008, and March 2008. The Comptroller was required to estimate these periods due to Debtor's failure to file required tax returns. The Comptroller's claim is an unsecured priority claim. *See* 11 U.S.C. § 507.

4. The TWC timely filed a proof of claim [Claim Number 56] for Texas unemployment taxes, penalty and interest accrued pre-petition in the amount of $14,286.15. The TWC's claim is based on a return filed by Debtor for the tax period of the first quarter 2008.

**Administrative Expense Claims**

5. The Comptroller filed a proof of claim [Claim Number 127] for sales taxes, penalty and interest accrued post-petition in the amount of $81,285.64. The Comptroller's claim is an administrative expense claim. *See* 11 U.S.C. § 503.

6. The Comptroller filed a proof of claim [Claim Number 128] for TERP taxes, penalty and interest accrued post-petition in the amount of $14,078.71. The Comptroller's claim is based on estimates for the tax periods of March 2008 through July 2008. The Comptroller was required to estimate these periods due to Debtor's failure to file required tax returns. The Comptroller's claim is an administrative expense claim. *See* 11 U.S.C. § 503.

7. The TWC filed a proof of claim [Claim Number Amended 57] for Texas unemployment taxes, penalty and interest accrued post-petition in the amount of $2,457.25. The TWC's claim is based on returns filed by Debtor for the tax periods of the first and second quarter 2008. The TWC's claim is an administrative expense claim. *See* 11 U.S.C. § 503.

## OBJECTIONS

### Priority Tax Claims

8. The Debtor provides for payment of Priority Tax Claims, including those of the Comptroller and the TWC, as Class 3 Claimants under Section 5.4 of the Plan. The Comptroller and the TWC object because Section 5.4 does not provide for payment of Priority Tax Claims in accordance with the mandatory provisions of the Bankruptcy Code.

9. Section 1129(a)(9)(C) requires § 507(a)(8) priority claims receive regular installment payments to be completed not later than 5 years after the petition. Therefore, the Plan should provide for payment of the Comptroller's and the TWC's Priority Tax Claims in monthly installments to be completed not later than March 26, 2013. Furthermore, § 1129(a)(9)(C) requires holders of priority claims receive the present value of their claims. Pursuant to § 511 of the Bankruptcy Code, the rate of interest which must be paid in order to enable a creditor to receive the present value of a tax claim is to be determined under applicable nonbankruptcy law as of the calendar month in which a plan is confirmed. A hearing on confirmation is scheduled for December 9, 2008. Therefore, the appropriate rate of interest on the Comptroller's claim is 9.25%[1] as determined by § 111.060 of the Texas Tax Code; and the appropriate rate of interest on the TWC claim is to be determined by § 213.021 of the Texas Labor Code.

10. Section 5.4 of the Plan simply states that Priority Tax Claims will be paid out of the Transferred Assets after payment of any secured claims. It further provides that, to the extent a

---

[1] Texas Tax Code § 111.060(b) states, "The rate of interest to be charged to the taxpayer is the prime rate plus one percent, as published in *The Wall Street Journal* on the first day of each calendar year that is not a Saturday, Sunday, or legal holiday." The prime rate on January 1, 2007 was 8.25%.

Priority Tax Claim becomes allowed after a claim dispute, it will be paid in accordance with the provisions of the Bankruptcy Code. These provisions are vague and do not make it clear how such payments will be funded or made. Because Section 5.4 of the Plan does not comply with the mandatory provisions of § 1129(a)(9)(C) regarding the payment of Priority Tax Claims, confirmation should be denied.

**Administrative Expense Claims**

11.     The Comptroller and the TWC objection because the Plan does not clearly provide for payment of administrative expense claims. Section 3.1 of the Plan provides that "[a]ll trade and service debts...incurred in the normal course of business of the Debtor on or after the Petition Date will be paid when due in the ordinary course of the Debtor's business..." Then in Section 5.2 of the Plan, Debtor states that "[t]his case will not be closed until all allowed Administrative Claims are paid in full." However, Section 5.2 appears to provide for payment of Administrative Claims of Professionals and the U.S. Trustee only.

12.     Pursuant to § 1129(a)(9)(A) of the Bankruptcy Code, the Plan must provide for full payment of all administrative expenses on the Effective Date. As evidenced by the Comptroller's and the TWC's Administrative Expense Claims, the Debtor has not paid post-petition liabilities "when due in the ordinary course of the Debtor's business" as provided in Section 3.1. Because the Plan does not clearly provide for payment of the Comptroller's and the TWC's Administrative Expense Claims as mandated by § 1129(a)(9)(A), confirmation should be denied.

**Feasibility**

13.     The Comptroller and the TWC object because the Plan is not feasible. Pursuant to § 1129(a)(11) of the Bankruptcy Code, Debtor bears the burden to prove that the Plan is feasible.

As proposed, the Plan cannot meet this burden. After deducting the amounts disbursed (1) pursuant to the Order on Motion for Authorization to Disburse Proceeds of Sale to Secured Creditors [Docket No.252], (2) pursuant to the Order Granting in Part and Denying in Part Motion of Texas Bank & Trust to Distribute Funds from Sale of Assets [Docket No. 317], (3) to Goodman Factors under Section 5.6 of the Plan, and (4) to W.E. Sword under Section 5.7 of the Plan, the amount remaining in the estate is insufficient to fund a proper plan.

14. The sale of Debtor's assets did not generate funds sufficient to pay either priority tax claims or administrative expenses in full as required by § 1129(a)(9)(A) and (C). If the Comptroller's and TWC's claims are allowed in full, compliance with Section 5.4 of the Plan which says such allowed claims will be paid in accordance with the provisions of the Bankruptcy Code, does not seem possible. Because the Debtor has not met its burden of proving feasibility, confirmation should be denied.

15. Furthermore, the Plan is infeasible to the extent Debtor intends for a litigation fund to be established by the Liquidating Trustee. Section 6.18 of the Plan states that reserves will be created for trust operations, claims disputes, and undetermined claims. Under the Plan, the Liquidating Trustee shall have the right to pursue litigation on behalf of the estate. While Section 6.18 does not expressly state that a litigation fund will be established, the "Potential Litigation for the Benefit of Creditors" section of the approved Disclosure Statement indicates that the law firm of Ogletree & Deakins, which performed an evaluation of Debtor's potential litigation, would require a $100,000 litigation fund be established.

16. The Comptroller and the TWC object to use of the very limited estate resources for the purpose of funding potential litigation. The disclosure statement outlines the findings of Ogletree

& Deakins evaluation and states that the "evidence...appears strong" and that "[m]any viable causes of action can be pled" in light of that evidence. The outline further states that the firm has "had recent success in a matter in east Texas under similar facts", which makes the firm feel good about its ability to prove liability.

17.     Because Ogletree & Deakins has indicated a belief that the evidence is strong enough to prove liability, that law firm might consider handling potential litigation matters on a contingency basis instead of requiring funding out of what little remains in the estate. However, the firm's evaluation goes on to state that, "[t]he wild card in this case involves damages." Indicating that, while the evidence of liability appears strong, the firm doubts its ability to make an actual recovery for the estate. Therefore, pursuing the litigation would appear to be of little, if any, benefit to the estate and its creditors.

18.     The evaluating law firm having already predicted difficulties in recovering damages, it seems imprudent to expend valuable estate resources in such pursuit. If the law firm would not agree to handle the matters on a contingency basis, the Comptroller and the TWC would suggest that converting this case to Ch. 7 - foregoing the costs of pursuing the potential litigation and making distributions to creditors rather than to a law firm - would be a more prudent use of the estate's very limited resources.

**Claims Dispute**

19.     Section 5.4 of the Plan states that Debtor will be objecting to the Comptroller's claim, but does not establish a deadline for asserting such objection, and does not adequately provide for claims during any period the claims may be disputed. Section 6.18 of the Plan states that the Liquidation Trustee shall establish "adequate reserves" for Disputed Claims. However, it is not clear

how such reserves will be set up or how they will be funded. Because the Comptroller and the TWC are entitled to interest on their claims from the Effective Date, should the claims be disputed, the Plan should provide for the escrow of plan payments that would be made under a proper plan, into an interest-bearing account, pending the resolution of the dispute. In addition, the Plan should set forth a deadline by which claim objections must be filed.

## Default

20. Finally, the Comptroller and the TWC object to the default provisions in Section 9.2 of the Plan to the extent that a 30 day cure period is unreasonable and that the provision is wholly lacking remedies available where default is not cured. Debtor has had a sufficient amount of time to cure the pre- and post-petition delinquencies with the Comptroller and the TWC, but has not done so. It is unreasonable to ask the Comptroller or the TWC to wait an extended period of time before proceeding with state law remedies in the event of default after confirmation. Instead of increasing the burden on creditors, the Plan should provide clear and concise default remedies such as:

> A failure by the Liquidation Trustee to make a payment to the Comptroller or the TWC pursuant to the terms of the Plan shall be an Event of Default. If the Liquidation Trustee fails to cure an Event of Default within twenty (20) calendar days after service of a written notice of default, then the Comptroller or the TWC may (a) enforce the entire amount of its claim(s), (b) exercise any and all rights and remedies under applicable non-bankruptcy law, and (c) seek such relief as may be appropriate in this court. The Liquidation Trustee will be allowed to cure no more than two Events of Default with the Comptroller or the TWC; a third Event of Default may not be cured.

Pursuant to 11 U.S.C. § 1123(a)(5)(G), which requires that a plan provide adequate means for the plan's implementation, such as "curing or waiving of any default", the provisions set forth above should be added to the Plan. Otherwise, confirmation must be denied.

WHEREFORE, unless the Plan is amended to comply with the applicable provisions of the

7

Bankruptcy Code, the Comptroller requests confirmation of the Plan be denied.

                                  Respectfully submitted,

                                  GREG ABBOTT
                                  Attorney General of Texas

                                  KENT C. SULLIVAN
                                  First Assistant Attorney General

                                  DAVID S. MORALES
                                  Deputy Attorney General for Civil Litigation

                                  RONALD R. DEL VENTO
                                  Assistant Attorney General
                                  Chief, Bankruptcy & Collections Division

                                  */s/ Kimberly Walsh*
                                  KIMBERLY WALSH
                                  Assistant Attorney General
                                  Texas State Bar No. 24039230
                                  Bankruptcy & Collections Division
                                  P. O. Box 12548
                                  Austin, TX 78711-2548
                                  Telephone:  (512) 475-4863
                                  Facsimile:  (512) 482-8341
                                  kimberly.walsh@oag.state.tx.us

                                  ATTORNEYS FOR THE TEXAS WORKFORCE
                                  COMMISSION AND TEXAS COMPTROLLER
                                  OF PUBLIC ACCOUNTS

## **CERTIFICATE OF SERVICE**

     I certify that on November 21, 2008, a true copy of the foregoing was served by the method and to the following parties as indicated:

By Regular First Class Mail:

Zipco International Products Company, Inc.
6208 SH 42 North
Kilgore, TX 75663

By Electronic Means as listed on the Court's ECF Noticing System:

Martin Barenblatt martinbarenblat@yahoo.com
6440 North Central Expressway, Ste. 415
Dallas, TX 75206 4137

George Manion Conner fileconner@spyderinternet.com.
PO Box 113
Tyler, TX 75710 0113

Donald W. Cothern doncothern@sbcglobal.net
100 E. Gerguson St., Ste. 1016
Tyler, TX 75702 5706

Jeffrey R. Cox jcox@slmpc.com
510 N. Valley Mills Dr., Ste. 500
Waco, TX 76710 6077

Dewey M. Dalton dmd@daltonlawfirm.net
8828 Greenville Avenue
Dallas, TX 75243 7143

Jeffrey S. Davis sharonlee3157@sbcglobal.net
108 E. Chambers ST
Cleburne TX 76031 5609

Patrick D. Devine pdevine@pdevinelaw.com
4615 SW FRW Ste. 405
Houston, TX 77027

Dennis A. Dressler ddressler@dresslerpeters.com
111 W. Washington Street, Ste. 1900
Chicago, IL 60602 2713

Lew Dunn dunn@texramp.net
PO Box 2226
Longview, TX 75606 2226

Michael Patrick Duray mduray@ont.com, mduray@ont.com
6820 Walling Ln
Dallas, TX 75231 7204

Eric A. Liepins eric@ealpc.com, martha@ealpc.com

12770 Coit Rd, Ste. 1100
Dallas, TX 75251 1329

John Mayer jmayer@rossbanks.com
2 Riverway, Ste. 700
Houston, TX 77056 1918

William Thomas McLain wtm@reaganmclain.com
6060 N Central Exp Ste. 790
Dallas, TX 75206 5282

John Christopher Middleton john.middleton@haynesboone.com
2323 Victory Ave., Ste. 700
Dallas, TX 75219

Carrie R. Mitchell cmitchellesq@earthlink.net
PO Box 849
Canton, TX 75103 0849

Mitch Motley mmotley@ccfww.com, cmiley@ccfww.com
1127 Judson Rd., Ste 211
Longview TX 75606 2665

Timothy W. O'Neal Timothy.W.O'Neal@USDOJ.GOV,
110 N College Ave., Ste. 300
Tyler, TX 75702 7231

USTPRegion06.TY.ECF@USDOJ.GOV
110 N. College Ave., Ste. 300
Tyler, TX 75702 7231

Blake Rasner brasner@haleyolson.com, jrostockyj@haleyolson.com;cfarris@haleyolson.com
510 North Valley Mills Dr
Waco, TX 76710 6075

Michael Reed dgibson@mvbalaw.com;danielle.goff@mvbalaw.com;kmorriss@mvbalaw.com
PO Box 1269
Round Rock, TX 78680 1269

Scott Alan Ritcheson scottr@rllawfirm.net, andreah@rllawfirm.net;mistyb@rllawfirm.net
821 ESE Loop 323 Ste. 530
Tyler, TX 75701 9779

Andrea F. Roosth andrear@lawbbj.com
12720 Hillcrest Rd., Ste. 280
Dallas, TX 75230 2053

Sidney H. Scheinberg sid@gpm-law.com, sidscheinberg@sbcglobal.net;;;swu@gpm-law.com;ccooper@gpm-law.com
2200 One Galleria Tower
13355 Noel Rd., BC 48
Dallas, TX 75240 6832

Joshua P. Searcy jrspc@jrsearcylaw.com, joshsearcy@jrsearcylaw.com
PO Box 3929
Longview, TX 75606 3929

Dean Allen Searle klled218@gmail.com
PO Box 910
Marshall, TX 75671 0910

Tom W. Sharp tsharp@blalack.com
1420 W. Mockingbird, Ste. 640
Dallas, TX 75247 4995

Sharon H. Sjostrom ssjostrom@blalack.com
1420 W. Mockingbird, Ste. 640
Dallas, TX 75247 4995

Laurie A Spindler laurie.spindler@publicans.com, Matilde.Alvarado@publicans.com;Dallas.Bankruptcy@publicans.com
2323 Bryan St., Ste. 1600
Dallas, TX 75201 2644

Joe K. Thigpen joethigpen@yahoo.com
110 N College, Ste. 1401
Tyler, TX 75702 7244

Stephen G. Wilcox gcolvilleedtx@basselwilcox.com, aaustin@basselwilcox.com
PO Box 11509
Fort Worth, TX 76110 0509

                                              */s/ Kimberly Walsh*
                                              KIMBERLY WALSH